UNITED STATES DISTRICT COURT
DISTRICT OF MINNESOTA

Scott L. Nokes,

Civ. File No. 00-2737 (PAM/JGL)

Plaintiff,

v.

**MEMORANDUM AND ORDER**

United States Coast Guard; The Honorable Rodney E. Slater, Secretary of Transportation, in his official capacity; Captain Warren G. Schneeweis, Director, Coast Guard Recruiting Center, in his official capacity; United States Attorney's Office, Minneapolis, Minnesota; and United States Attorney General, Washington, DC;

Defendants.

---

This matter is before the Court on Defendants' Motion to Dismiss or for Summary Judgment. For the following reasons, the Court grants Defendants' Motion to Dismiss.

**BACKGROUND**

Plaintiff Scott Nokes is an active duty First Class Petty Officer in the Coast Guard. Prior to entering the Coast Guard nine years ago, he served nine years with the Navy. Since 1999, Nokes has served at the Coast Guard Recruiting Center in Minneapolis. Defendants in this case are the Coast Guard; Rodney Slater, the Secretary of Transportation; Captain Warren Schneeweis, Director of the Coast Guard Recruiting Center; the United States Attorney's Office for the District of Minnesota; and the United States Attorney General.

FILED AUG 10 2001
RICHARD D. SLETTEN, CLERK
JUDGMENT ENTD AUG 1 2001
DEPUTY CLERK

On May 18, 2000, Nokes received notice that he was eligible to advance to the rank of Chief Petty Officer. Nokes' commanding officer, Defendant Schneeweis, ultimately decided to withhold the recommendation necessary for that advancement for six months. According to Defendants, Schneeweis withheld the recommendation because of misconduct. First, Nokes allegedly lied to his superiors about his absence from work on January 4-5, 2000. Nokes informed his superiors that he needed time off to take his wife to the hospital. In truth, Nokes was in the Anoka County jail for allegedly assaulting his wife. Second, Nokes allegedly forged a check belonging to his wife. Nokes accepted non-judicial punishment for those offenses and was required to attend a thirteen-week compassion workshop.

During the six-month hold on his advancement, Nokes allegedly engaged in further misconduct. First, Nokes was charged with making unauthorized personal long distance calls on his government calling card. Nokes ultimately reimbursed the government for those calls. Second, Nokes was charged with unauthorized personal use of the government's FedEx account. Nokes chose to proceed with those charges in a trial by court-martial.

On December 5, 2000, Nokes filed a request with his commanding officer, Schneeweis, seeking advancement to Chief Petty Officer. That request was denied. On December 13, 2000, Schneeweis ordered Nokes' name removed from the advancement eligibility list. Nokes then sought a request for relief from that action. He was denied such relief on March 5, 2001. That denial was reviewed and upheld by the Officer of Military

Justice. Nokes remains in his position as an active duty First Class Petty Officer at the Recruiting Center in Minneapolis.

On December 20, 2000, Nokes commenced this lawsuit under the Administrative Procedure Act ("APA"), 5 U.S.C. §§ 701-06, claiming that in denying him advancement, Defendants improperly failed to properly apply Coast Guard regulations and procedures. Nokes seeks an order requiring the Coast Guard to promote him to the rank of Chief Petty Officer (effective June 1, 2000), requiring the removal of all derogatory notations from his official service record, and permanently enjoining Defendants from retaliating against him for filing this lawsuit. Apart from back pay, Nokes does not seek any monetary damages. Defendants now seek dismissal of this lawsuit pursuant to Rules 12(b)(1), 12(b)(6), and 56 of the Federal Rules of Civil Procedure.

**DISCUSSION**

**A. Jurisdiction**

Defendants first argue that Nokes' Amended Complaint should be dismissed for lack of jurisdiction because he has failed to exhaust administrative remedies. Nokes concedes that he still has an avenue of administrative appeal with the Coast Guard's Board for Correction of Military Records ("BCMR"). Nevertheless, Nokes maintains that he need not exhaust his administrative remedies before seeking relief from this Court.

The pivotal case on this issue is Darby v. Cisneros, 509 U.S. 137 (1993). In Darby, the Supreme Court held that under the APA, once an agency action is "final" the exhaustion

of administrative remedies "is a prerequisite to judicial review only when expressly required by statute or when an agency rule requires appeal before review and the administrative action is made inoperative pending that review." Id. at 154.

In this case, there is no dispute that the agency action was final within the meaning of the APA and that there is no statute or agency rule requiring the exhaustion of administrative remedies. However, Defendants argue that Darby should not be extended to military personnel cases because the military has a special status as an agency with its own comprehensive internal system of justice to regulate military life.

Many district courts have concluded that Darby does indeed apply in military personnel cases. See, e.g., Crane v. Secretary of the Army, 92 F. Supp. 2d 155 (W.D.N.Y. 2000); Wilhelm v. Caldera, 90 F. Supp. 2d 3 (D.D.C. 2000), aff'd, 2001 WL 418038 (D.C. Cir. Mar. 15, 2001); St. Clair v. Secretary of the Navy, 970 F. Supp. 645 (C.D. Ill. 1997); Perez v. United States, 850 F. Supp. 1354 (N.D. Ill. 1994). The Court is aware of only one district court that has concluded that Darby should not apply to military personnel cases. In Saad v. Dalton, 846 F. Supp. 889, 891 (S.D. Cal. 1994), the court concluded that Darby does not apply to cases involving military personnel action because such actions are in a "unique context with specialized rules limiting judicial review."

Given Darby's broad language, the Court concludes that the cases in which courts have declined to find a military exception are correct and should be followed. As noted in Perez,

> Nothing in the Court's decision leads this court to believe that Darby is limited to H.U.D. specifically, or to non-military agencies generally. Throughout Darby, the Court, through Justice Blackmun, speaks in general terms of all agencies without distinguishing between those involved in military matters and those which are not. In fact, in the few months since Darby was decided, federal courts have applied its holding to disputes involving a variety of federal agencies; none of these cases suggests that Darby's holding is limited to only certain types of agencies.

850 F. Supp. at 1360. Thus, until the Coast Guard, the Department of Transportation, or Congress makes administrative exhaustion a prerequisite to federal jurisdiction, this Court has jurisdiction to hear direct judicial review of final military decisions, such as the failure to promote at issue here, even where the plaintiff has failed to exhaust all available administrative remedies. See id. at 1361. Defendants challenge to this Court's jurisdiction fails.

### B. Reviewability of Military Personnel Decisions

Defendants next argue that Nokes' claim is precluded because the adverse action in this case was a military personnel decision, and therefore should not be reviewed by this Court. Nokes argues that Darby renders Defendants' argument untenable.

The Eighth Circuit uses a two-part test originally set forth by the Fifth Circuit in Mindes v. Seaman, 453 F.2d 197, 201-02 (1971) to determine when a claim against the internal military action is reviewable.

> First, a plaintiff challenging an internal military decision must allege a violation of the Constitution, a statute, or military regulation, and demonstrate exhaustion of intraservice remedies. If a plaintiff satisfies the first step, the trial court must then balance four factors to determine

> the claim's suitability for judicial review: (1) the nature and strength of the plaintiff's challenge to the military determination, (2) the potential injury to the plaintiff if review is refused, (3) the type and degree of anticipated interference with the military function, and (4) the extent to which the exercise of military expertise or discretion is involved.

Nieszner v. Mark, 684 F.2d 562, 563-64 (8th Cir. 1982). Because Mindes incorporates an exhaustion component, there is a question as to whether that test remains valid after Darby. No court has definitively addressed this issue.[1] All of the Eighth Circuit cases applying or discussing this standard are pre-Darby.

The Court first notes that the Mindes test is separate and distinct from the APA's finality requirement:

> [A]pplying the exhaustion component of the Mindes test to service members who use the APA to challenge internal military decisions is not a rule of judicial administration that serves to supplant the APA's finality requirement. Rather, it is a critical factor in an integrated, reviewability matrix that–like the political question doctrine and the primary jurisdiction doctrine–serves separation of powers concerns. Application of the doctrine results in channeling claims that are unsuitable for judicial review to the appropriate congressionally created review board, which will compile an administrative record, render findings of fact, and apply particularized expertise in interpreting and applying relevant military regulations and policies.

See Captain E. Roy Hawkens, USNR, The Exhaustion Component of the Mindes Justiciability Test is Not Laid to Rest by Darby v. Cisneros, 166 Mil. L. Rev. 67, 79-80

---

[1] One district court refused to apply the Mindes test in light of Darby, but the Tenth Circuit reversed that decision. See Robertson v. United States, 145 F.3d 1346 (Table), 1998 WL 2231158 (10th Cir. May 1, 1998). Unlike in this case, there was no claim that the plaintiff in Robertson had in fact exhausted all administrative remedies prior to seeking judicial review of his claim.

(2000). Thus, because Darby and Mindes serve different purposes, the Court concludes that Darby need not have any effect on Mindes' exhaustion component.

Moreover, keeping Mindes intact is consistent with congressional intent and the Feres principle. Recognizing the unique nature and structure of the military, Congress has been historically loathe to permit judicial intrusion into military affairs. See id. at 80. The Supreme Court also recognized this aversion to congressionally uninvited intrusions. In Feres v. United States, 340 U.S. 135, 146 (1950), the Supreme Court held that absent an express and unequivocal declaration of congressional intent, courts may not construe a statute as authorizing judicial interference in military matters. The Feres principle has "evolved into a 'judicial doctrine leaving matters incident to service to the military, in the absence of congressional direction to the contrary.'" Hawkens, supra, at 81. With these principles in mind, the Court concludes that the Mindes test remains valid.

Although Nokes does raise a violation of a military regulation as required by Mindes, he has admittedly not exhausted his administrative remedies. Nokes may still petition the BCMR for relief. The BCMR is recognized as a "significant intramilitary remedy for purposes of the exhaustion component of the Mindes test." Id. at 86. The BCMR's review authority is expansive:

> Pursuant to procedures established by the relevant service secretary and approved by the Secretary of Defense, service members are entitled, with the assistance of legal counsel, to submit all relevant records, evidence, and arguments to the BCMR, which in turn may grant hearings and consider any regulatory, legislative, or constitutional grievance advanced

> by the service member. The BCMR compiles an administrative record, and then exercises its broad remedial authority to grant appropriate relief, which may consist of correcting a military record, reinstating a member in the military, or awarding back pay or other pecuniary benefits.

Id. at 86-87. Thus, Nokes is not without a meaningful intramilitary remedy for his allegations. Because Nokes cannot meet the first required step in Mindes, the Court concludes that Nokes' claim should be dismissed. The Court will, however, dismiss his claim without prejudice, so that after all intramilitary remedies have been exhausted, he may refile his case in this Court if he is dissatisfied with the outcome of those remedies.

**CONCLUSION**

For the foregoing reasons, and upon all of the files, records, and proceedings herein, the Court grants Defendants' Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED** that:

1. Defendants' Motion to Dismiss or for Summary Judgment (Clerk Doc. No. 17) is **GRANTED**; and
2. Nokes' Complaint (Clerk Doc. No. 1) is **DISMISSED WITHOUT PREJUDICE**.

**LET JUDGMENT BE ENTERED ACCORDINGLY.**

Dated: August 10, 2001

Paul A. Magnuson
United States District Court Judge

AUG 10 2001

# UNITED STATES DISTRICT COURT
# DISTRICT OF MINNESOTA

## CIVIL NOTICE

DATE MAILED TO COUNSEL/PRO SE PARTIES:

The purpose of this notice is to summarize the time limits for filing with the District Court Clerk's Office a Notice of Appeal to the Eighth Circuit Court of Appeals from a final decision of the District Court in a civil case.

***This is a summary only. For specific information on the time limits for filing a Notice of Appeal, review the applicable federal civil and appellate procedure rules and statutes.***

Rule 4(a) of the Federal Rules of Appellate Procedure (Fed. R. App. P.) requires that a Notice of Appeal be filed within:

1. Thirty days (60 days if the United States is a party) after the date of "entry of the judgment or order appealed from;" or

2. Thirty days (60 days if the United States is a party) after the date of entry of an order denying a timely motion for a new trial under Fed. R. Civ. P. 59; or

3. Thirty days (60 days if the United States is a party) after the date of entry of an order granting or denying a timely motion for judgment under Fed. R. Civ. P. 50(b), to amend or make Additional findings of fact under Fed. R. Civ. P. 52(b), and/or to alter or amend the judgment under Fed. R. Civ. P. 59; or

4. Fourteen days after the date on which a previously timely Notice of Appeal was filed.

If a Notice of Appeal is not timely filed, a party in a civil case can move the District Court pursuant to Fed. R. App. P. 4(a)(5) to extend the time for filing a Notice of Appeal. This motion must be filed no later than 30 days after the period for filing a Notice of Appeal expires. If the motion is filed after the period for filing a Notice of Appeal expires, the party bringing the motion must give the opposing parties notice of it. The District Court may grant the motion, but only if excusable neglect or good cause is shown for failing to file a timely Notice of Appeal.

C:\FORMS\APPEAL NO. CIV
Rev. August 11, 1995

**Please forward this announcement to the recipient of this fax.**

---

# The United States District Court, District of Minnesota announces two new programs!

**Expedited Trials** –The Court will begin offering parties an opportunity to participate in a program called Expedited Trials beginning July 2, 2001. This voluntary program offers an alternative to traditional case processing by allowing for a shorter time period from filing to disposition. Discovery and motion practice will be sharply limited as a means to reduce time and expense. Procedural rules are on the Court's website at www.mnd.uscourts.gov. If you would like additional information about the Expedited Trials Program, contact one of our clerk's offices at the phone numbers listed below.

**Courtroom Technology – Phase II** – In June 2001, the District of Minnesota began upgrading, installing, and enhancing the technology available to counsel in the courtroom. The project will continue through early fall and will ultimately upgrade all Article III Judge courtrooms in St. Paul and Minneapolis. To assist counsel with this transition, the District Court is offering a hands-on class, worth one hour of CLE credit at both courthouses. Classes will be held over the lunch hour. Course registration can be done by visiting www.mnd.uscourts.gov or by calling Kristine at 612-664-5125.

**For additional information on either program please visit our website at www.mnd.uscourts.gov.**

---

700 Federal Building
316 North Robert Street
St. Paul, MN 55101
(651) 848-1100

202 U.S. Courthouse
300 South Fourth Street
Minneapolis, MN 55415
(612) 664-5000

417 U. S. Courthouse
515 West First Street
Duluth, MN 55802
(218) 529-3500